The next matter, No. 22-1967, Nahant Preservation Trust, Incorporated, et al. v. Mount Vernon Fire Insurance Company, et al. At this time, would counsel for the appellants please introduce themselves on the record to begin. Good morning. May it please the Court. My name is John Frumer. I'm here on behalf of Plaintiff Appellant Nahant Preservation Trust and its officers, directors, and volunteers. The case is here before you today because the judge in the district court dismissed it on a Rule 12b-6 motion to dismiss. And, counsel, we're familiar with what you briefed and the facts of the case. So if you want to get straight to the argument, please go ahead. You'll have more time. Thank you, Your Honor. The judge below erred, we believe, significantly in treating these policies as claims-made policies. The policies say on the declaration... In treating it as a claims-made policy? In other words, you say this policy is not a claims-made policy? Your Honor, it says on the declarations page, this is a claims-made policy unless otherwise provided herein. And the endorsement that is at issue, the mandatory endorsement... The endorsement changes an exclusion within the policy. It does not change the notice requirements. It doesn't change the policy period. It doesn't change the reporting. There's no language in it that changes the notice or reporting requirements. It absolutely changes the policy period, Your Honor. Excuse me. Policy period is a defined term which isn't mentioned in the endorsement. You have a feeling as to how it changes the policy period. Your Honor, why? Your Honor, why is there a definition of policy year here? There's a definition of policy year for the purposes of this narrow exclusion. It does not affect... It has nothing to do with notice under the policy. You have an obligation under Section 5 of this policy, client has an obligation, which was not affected by this endorsement, to give notice as soon as practicable. And we did. It doesn't say anything about the policy period. It doesn't say anything about the time period. As soon as practicable, that clearly wasn't complied with. You want us to construe an amendment to an endorsement to affect the policy as a whole and overlook entirely the second sentence of a two-sentence endorsement, which specifically provides that all other terms and conditions of the policy will be unaffected by the endorsement.  You want to affect everything by the endorsement. What does other mean, Your Honor, if the exact verbiage of the endorsement itself is therefore deemed irrelevant? If you don't apply it... It's not irrelevant. It has a meaning. It changes the meaning of the exclusion. But it doesn't deal with notice. But it clearly changes the definition of policy period, or there would be no reason at all to go through the lengths that the underwriting... It doesn't change the meaning of policy period. It changes the effective date of the policy for purposes of this exclusion. Effective date for purposes of this exclusion. If that's not a verbatim quote of what it says, it's pretty close. Your Honor, we need to... It doesn't use the term policy period at all. It uses the term effective date, and it does change the term effective date for purposes of the exclusion. But you want to take that language, give it what with all respect I think is a clearly unreasonable interpretation that no reasonable insured would expect to be the interpretation, and say that this little amendment changes the entire policy, and by the way, judges, overlook entirely the second sentence of this two-sentence endorsement. Your Honor, I don't understand, and I believe it is a completely rational reading, that the claims made nature of the policy is changed when by its own... The words on the first page, it's otherwise provided herein. Where else is some language in the policy which would change this from a claims made policy? We will not know that until we have an opportunity to do discovery and to speak with underwriters to look at the way other claims have handled. We do not at this stage, at a 12B6 stage, we do not have to necessarily be right, our chances of success may be remote. All we have to do is state a facially inconsistent showing of the verbiage of the policy so that we make out a plausible claim, and we believe we did it. What happens at summary judgment stage, that remains to be seen. But for us to not have the opportunity to do discovery with you... But this is a contract, so don't we just look at the language of the contract and that's it. We're not using extrinsic documents, we're not using extrinsic evidence, and Massachusetts law is clear. It is what the contract says. If the terms are clear, then you don't go to extrinsic evidence. It's a fact-based assessment in the first instance, excuse me, as a matter of law. But if there is a facial inconsistency, which there is here, then you end up, you revert to looking at other aspects of the contract and potentially extrinsic evidence, which gets you past the 12B6 stage. Let me ask, why, if it's in the record, why was Mount Vernon notified in 2021 about what took place in 2019, I believe it was? I wasn't counsel at that point, so I can't say conclusively, but I do know that they didn't even have a copy of the policy because of the way that USLI and Mount Vernon function, where they use three separate intermediaries between them and the insurant. Somebody must have signed it. There's got to be a paper trail somewhere. And if I'm a policyholder and I don't have a copy of my policy, I'm going to be calling and I want to see that policy. It's a not-for-profit institution, small, unsophisticated. Let me change my question. Let's assume these facts took place during policy number two. The notice is given during policy number four. What if policy number two was never renewed and there was no policy three, no policy four? Would you still have a claim, notifying it two years later? Not necessarily because the language in various places is then non-operative. If you don't have a continuous succession without a lapse of coverage, you don't get this extended period, which is what the endorsement does. So what you're suggesting is that by every extension, then that, you know. So in theory, let's assume there was a policy number five or policy number six, and you notified in 2023, you would still be covered, correct? Under this language, that is something that we believe is the case. Thank you. Anything else, counsel? We also believe that the judge erred in looking at the reasonable expectation test. That is a test which is used when there is an ambiguity. And if he devolved to using that test, that shows that he felt that there was an ambiguity. And once he determines that there may be an ambiguity, that goes to the plausibility of the claims in the underlying complaint, at which point. I review counsel as they know both. So we're not wed to the reasoning of the district court. We're concerned dealing with what the correct result of this appeal should be. Thank you, Your Honor. And to that point, where we believe this is effectively a case of first impression, we've not seen the language which at the beginning of the policy says, unless otherwise provided herein, we haven't seen this mandatory endorsement with this verbiage ruled on by any court. And we see that there is a, in addition to it being first impression, it is facially inconsistent. And unless you read out the meaning, unless otherwise provided herein, that means something. And we believe we're entitled to identify what it means. The underwriters clearly had in mind that this was not a claims-made policy for all occasions. Instead, it is a claims-made policy under certain circumstances. And there is this endorsement and two others like it, which we believe take it out of being a pure claims-made policy. Thus, Chas Main, that case is not necessarily, is not relevant. And a few of the other cases cited by the appellees are not relevant. Okay, thank you. Judge Montecarlo, any questions? No, thank you. Okay, thank you. Thank you. Let's hear then from Mr. Rose for Mount Vernon. Thank you. Good morning, Your Honors. Lincoln Rose on behalf of the defendants appellees, Mount Vernon Fire Insurance Company, the United States Liability Insurance Group. This court should affirm the district court's decision as the prior or pending litigation endorsement is unambiguous and Hans' complaint fails to state a claim for relief since it did not timely report the underlying claim. To begin with the unambiguous nature of the endorsement, as Your Honors know, under Massachusetts law, a policy term is only ambiguous when reasonably intelligent people would differ as to the proper meaning of a term. And an ambiguity does not exist simply because the parties disagreed about how to interpret the policy. Here, the district court correctly held that Mount Vernon's interpretation of the endorsement was a rational one and a plausible interpretation as it gives effect to the exclusion and the endorsement in its entirety. Mount Vernon's interpretation comports with this court's prior commentary on prior or pending litigation endorsements in that they promote prompt notice and avoid stacking of policy limits. Here, Mount Vernon's interpretation gives effect primarily to the beginning and the conclusion of the endorsement. As Judge Sala noted, the endorsement begins with language that is agreed that Directors and Officers Coverage Parts Section 4, Exclusion, subsection A, prior or pending litigation is deleted and replaced by the following. That's it. Exclusion A is deleted and replaced by what follows, and it concludes with that all other terms and conditions remain the same. Thus, under Mount Vernon's interpretation, effective date has a specific meaning for purposes of exclusion A and exclusion A alone. On the other hand, Nahant's interpretation, that so long as there's a continuous succession of policies that is not broken by a lapse of coverage, that a claim that is first reported in one policy year can be reported several policy years down the line is irrational for several reasons. First and foremost, it's directly at odds with the purpose of this endorsement. Again, this endorsement is limited to deleting and replacing an exclusion. In other words, this endorsement modifies how the policies preclude or restrict coverage. Nahant's interpretation reads this endorsement to broaden the scope of coverage and effectively create a multi-year policy period. So this is inconsistent with the primary purpose of the endorsement. And as the District Court noted, Nahant's interpretation would have drastic consequences on the policy as a whole. For instance, as the District Court pointed out, that adopting Nahant's position would cause sublimits of liability not to replenish or renew year after year. So, for instance, if there's a $200,000 sublimit of liability for, say, data breaches, if there's a $500,000 under Nahant's interpretation, you'd only have $200,000 for the five or six or seven and so forth. Further, as Judge Saylor again noted earlier, Nahant's interpretation effectively deletes the language out of the policy in that it ignores the beginning of the endorsement that this is limited to exclusion A. And secondly, it would need to rewrite the terms of the policy to include language that there's nowhere to be found, such as that this modifies the notice of reporting conditions of the policy or that effective date has meaning outside of this endorsement. So it both relies on language that is nowhere to be found and deletes language that is actually there. And where the policy is unambiguous, a policyholder cannot rewrite the policy under a long line of cases both in this circuit and under Massachusetts law. Let me ask you. Brother Counsel mentioned that this was a case that there should have been discovery, some extrinsic evidence to understand how the parties understood the policy to apply. What's your position as to that? Your Honor, Mount Vernon's position is that the policy language is unambiguous. And I think, as Your Honor pointed out before, that this is contractual interpretation. And it's a question of law for the court to decide, frankly, on the eight corners based upon the complaint and the plain language of the policy. So where it's unambiguous, there's no need for any sort of extrinsic evidence or depositions or any other form of discovery where this is simply a matter of interpreting the plain language of the endorsement. And let me also ask you, the opposing counsel mentioned that his client apparently never obtained the copy because there's like two or three intermediaries and it's non-profit. What's your position on that? Your Honor, off my memory, that was not in the record. That was not alleged in the complaint or in the briefs, for that matter, if my memory serves. So, one, it's not in the record. And, two, again, this is a claims-made policy. And as both this court and other Massachusetts courts have held, compliance with the notice and reporting provisions is a strict prerequisite to coverage. So for all purposes, the complaint should at least have a counter saying, well, the policy was never provided to us even though we continued renewing it, and therefore we, you know, something like that. And that's not alleged anywhere in the complaint? It's not alleged, and frankly, Your Honor, I don't think it would make much of a difference where, again, this is a strict prerequisite to coverage under this type of policy. And this is a successive line of policies year after year for at least five years. So, again, it was not in the record before the court. I don't believe it was argued in the briefs and was raised for the first time here today. But, again, it is of no import to this analysis. And I believe where I left off, Your Honor, is that the last reason why Nahant's interpretation is irrational is that it's inconsistent with the purposes of claims made policies. As the Supreme Judicial Court laid out in Charles T. Main, and as this court laid out in Talcott, that the purpose of a claims made policy is to minimize the time between the insured event, in this case a claim being made, and payment of the claim. Under Nahant's interpretation, it flips the script on that and maximizes the potential time between the insured event and the claim. As Your Honor pointed out, that if this was a policy year six, a policy year seven, and this claim arised in year two, under Nahant's theory, so long as the policy is kept on renewing, they can notice it at any time down the road. And that frustrates the primary purpose of a claims made policy, which is to minimize the time and allow an insurer to effectively close the books after a policy year and understand what are the outstanding liabilities, what are the outstanding claims, so that it can effectively set premiums and reserves for future years. Because the policy and the endorsement are unambiguous, this matter is a straightforward, cut and dry analysis of longstanding precedent as to whether a claim was timely reported. And the record here undisputedly shows that Nahant did not timely report the claim. As Your Honor has pointed out, that this underlying lawsuit was filed on August 9th, 2019, which was during the policy period of the 2019 policy, or policy two, which ran from June 19th, 2019 to June 19th, 2020. Nahant alleges and concedes in its complaint that it gave Mount Vernon notice on July 27th, 2021, over a year after the policy period of policy year two expired. Under well-established Massachusetts precedent, including Charles T. Main, Gargano, and Talcott, this is the end of the inquiry because where notice was not timely, Mount Vernon is entitled to deny coverage based upon this late notice without a showing of prejudice. Lastly, I would point out that Nahant's argument, while trying to base it upon the policy language, is simply a repackaged version of the arguments that were rejected by this Court in both Talcott, 931 F2D 166, and DiLuglio v. New England Insurance Company, 959 F2D 355. In both those cases, the policyholder had successive claims made coverage with a single insurer. And in both those cases, they argued that the notice was still timely because of the successive nature of the policies. And the First Circuit rejected this argument in both cases and held that successive policies are frankly irrelevant to the nature of claims made policies, and that strict compliance is necessary in order to receive coverage under the policies. So once again, Your Honor, you are faced with the same argument that has been rejected previously, and we would request that this Court reject it once again. If Your Honors have no further questions, I will rest. Judge Celia or Judge Montecalvo, any further questions? Nothing further.  Thank you, Your Honor. Thank you, counsel, and court is adjourned. Do we have rebuttal? No. Oh, yeah. They have the rebuttal. Thank you. A couple of points, Your Honors. The stacking limits and sublimates arguments and positions just make no sense at all when you actually look at the policy language. The underwriters understood that they were changing the entirety of the policy with their amendment of the effective date language, and therefore they stuck in a whole nother provision which is relatively unique to this, and that's policy year limits. When in addition, so therefore in addition to the per-claim limit and aggregate limits, which are stated on the declarations page, those are amended by a different definition for policy year, policy year limits, and that whole definition would be of no moment, it would be completely unnecessary if the underwriters didn't have some kind of intent to make a more fluid and elastic definition of policy period here. The extrinsic evidence issue is the court below raised in its assessment of the premiums and the insured's reasonable expectations. The court brought in extrinsic evidence and improperly made inferences against the plaintiff and in favor of the defendant. What extrinsic evidence did the court below bring in? The court below brought in evidence or it inferred aspects about the premiums, such as risk transfer. What the court below did, if I'm not mistaken, was look at the contracts themselves, the insurance policies, correct? Correct, but all there was was a notation of what the annual premium was. From there, the court extrapolated and brought in what I would deem to be evidence which I would want to rebut and I would be able to rebut through discovery to show that these policies were not based, were not rated, and premiums were not calculated the way that claims made policies are, but in fact they were rated and calculated on a remunerative basis. Was that argued, was that at least alleged in the complaint? We didn't because it's not something that needs to be raised at a complaint stage. The judge raised it in oral argument at which point he's turning the standard from a 12B6 standard to a Rule 56 standard at which point I'm entitled to discovery to show that that is not correct. The case law in the circuit is clear. If you have a contract or insurance policy, you can look at it at the 12B6 stage. You're not bringing other extrinsic documents. You're just looking at that document which is the subject of the complaint. How do you surpass that standard? The decision below was based on going beyond what was in the complaint or attached to the complaint. The court made inferences which is contrary to what they should have been, not in the favor of the plaintiff, but instead against the plaintiff and in favor of the defendant. Discovery would show in each of those instances that it would substantiate what the claims are, but also that the underlying contentions in the complaint are quite plausible that the underwriters clearly intended, very different from the Talcott case, the other cases, Chaz Main, the underwriters clearly understood that by changing the words effective date, that that took this out of being a claims-made policy and turned it into something else. And why would they have said the words at the very beginning, this is claims made unless otherwise provided here, and no one has shown us where else those words would have any meaning. Okay. Thank you, counsel. Thank you very much. Court is adjourned. Thank you.